UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

OSAMAMWAFAQ A.

        Plaintiff,

  -v-                                              5:19-CV-1064

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OLINSKY LAW GROUP<br>Attorneys for Plaintiff<br>250 South Clinton Street, Suite 210<br>Syracuse, NY 13202 | HOWARD D. OLINSKY, ESQ. |
| SOCIAL SECURITY ADMINISTRATION<br>Attorneys for Defendant<br>J.F.K. Federal Building, Room 625<br>15 New Sudbury Street<br>Boston, MA 02203 | TIMOTHY SEAN BOLEN, ESQ.<br>Special Ass't United States Attorney |

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

On August 23, 2019, plaintiff Osamamwafaq A.[1] ("plaintiff" or "claimant") filed this action seeking review of defendant Commissioner of Social Security's ("Commissioner" or "defendant") final decision denying his application for Supplemental Security Income

---

[1] In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be used in this opinion.

("SSI"). Defendant has filed a certified copy of the Administrative Record and both parties have briefed the matter in accordance with General Order 18, which provides, *inter alia*, that a claimant's appeal from a final decision denying benefits will be treated as if the parties have included in their briefing cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff's appeal will be considered on the basis of these submissions without oral argument.

## II. BACKGROUND

On May 9, 2016, plaintiff, a Syrian immigrant to the United States, filed an application for SSI alleging that his right leg amputation, his left leg problems, and heart problems rendered him disabled beginning on January 1, 1982. R. at 189.[2] According to plaintiff's testimony and his disability application, he lost his right leg at six years old after being hit by a car. *Id*. at 97, 189. Plaintiff owns and uses a prosthesis, but it often causes him discomfort. *Id*. at 98.

Plaintiff's claim was initially denied on July 25, 2016. R. at 121-26. At his request, a hearing was scheduled before Administrative Law Judge ("ALJ") John P. Ramos on May 17, 2018 in Syracuse, New York. *Id*. at 105-10. However, ALJ Ramos adjourned this hearing so that plaintiff could secure legal representation to assist. *Id*. A second hearing was held before ALJ Ramos on October 2, 2018. *Id*. at 91-104. Plaintiff, represented by attorney Wurdi Sampson, appeared and testified through an Arabic interpreter. *Id*.

Thereafter, the ALJ issued a written decision denying plaintiff's application for benefits from May 9, 2016, the application date, through October 11, 2018, the date of his written

---

[2] Citations to "R." refer to the Administrative Record. Dkt. No. 9.

decision. *Id*. at 13-21. This decision became the final decision of the Commissioner on June 24, 2019, when the Appeals Council denied plaintiff's request for review. *Id*. at 1-5.

## III. DISCUSSION

### A. Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. *See Williams*, 859 F.2d at 258. Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner

applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### B. Disability Determination—The Five-Step Evaluation Process

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity. A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits. *Id*. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work

activities.  *Id*. §§ 404.1520(c)), 416.920(c)).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings").  *Id*. §§ 404.1520(d), 416.920(d); *see also id.* Pt. 404, Subpt. P, App. 1.  If the claimant's impairment or combination of impairments meets one or more of the Listings, then the claimant is "presumptively disabled."  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The burden of proof with regard to these first four steps is on the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five.  *Perez*, 77 F.3d at 46.  This step requires the ALJ to examine whether the claimant can do any type of work.  20 C.F.R. §§ 404.1520(g), 416.920(g).

The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs:  very heavy, heavy, medium, light, and sedentary.  *Perez*, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2).

"[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity." *Poupore*, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

### C. ALJ's Decision

The ALJ applied the five-step disability determination to find that: (1) plaintiff had not engaged in substantial gainful activity since May 9, 2016, the application date[3]; (2) plaintiff's right leg amputation, obesity, degenerative disc disease, and left leg muscle hernia were severe impairments within the meaning of the Regulations; (3) plaintiff's hypertension, hyperlipidemia, degenerative joint disease of the left shoulder, and depression were not severe impairments; and (4) plaintiff's severe impairments, whether considered individually or in combination, did not meet or equal any of the Listings. R. at 15-16.

At step four, the ALJ determined that plaintiff retained the RFC to "perform the full range of sedentary work." R. at 17. The ALJ determined that plaintiff had no past relevant work. *Id*. at 20. The ALJ also determined that plaintiff "is illiterate or unable to communicate in English." *Id*. However, because plaintiff could perform substantially all of the exertional demands of work at a sedentary level, the ALJ relied on the Medical–Vocational Guidelines (*i.e.*, the "Grids") to conclude that plaintiff was not disabled during the relevant time period. *Id*. at 20. Accordingly, the ALJ denied plaintiff's application for benefits. *Id*. at 21.

---

[3] Plaintiff's eligibility for SSI benefits began the month following his application. *See, e.g.*, *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 485 n.1 (2d Cir. 2012) (summary order).

### D. **Plaintiff's Appeal**

Plaintiff contends the ALJ's RFC determination is not supported by substantial evidence because he failed to include plaintiff's "significant manipulative limitations." Pl.'s Mem., Dkt. No. 12 at 8.[4] As plaintiff explains, consultative examiner Elke Lorensen, M.D. "opined that Plaintiff would have moderate limitations bending, lifting, and reaching, and marked limitations squatting." *Id*. Plaintiff points out that the ALJ gave Dr. Lorensen's opinion "significant weight" but "failed to explain why certain limitations were not adopted, mainly Plaintiff's reaching limitations." *Id*.

The Commissioner acknowledges that the ALJ's RFC determination is based on Dr. Lorensen's examination and findings. Def.'s Mem., Dkt. No. 14 at 6. However, defendant argues that plaintiff's argument fails to distinguish between limitations in someone's "reaching ability" and the related-but-analytically-distinct ability to handle and manipulate small objects using their hands. *Id*. at 7. As defendant explains, Dr. Lorensen found that plaintiff's hand and finger dexterity remained intact, and that plaintiff had no limitations in handling small objects. *Id*. at 8 & n.5.

"A hearing officer properly must incorporate non-exertional impairments—which include 'difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching[,]' *see* 20 C.F.R. § 404.1569a(c)(1)(vi)—into his RFC determination, and failure to do so generally warrants a remand." *Rowe v. Colvin*, 166 F. Supp. 3d 234, 239 (N.D.N.Y. 2016) (Young, J., sitting by designation).

---

[4] Pagination corresponds to CM/ECF.

Dr. Lorensen examined plaintiff on June 20, 2016 and completed a consultative report. R. at 280-83. Among other things, Dr. Lorensen found that plaintiff's hand and finger dexterity were intact, that his grip strength was "5/5" in both hands, and that he had no gross limitations in his ability to handle small objects with his hands. *Id*. at 282-83. As relevant here, Dr. Lorensen assessed "moderate limitations" in "reaching." *Id*. at 283. The ALJ expressly considered Dr. Lorensen's finding that plaintiff had a "moderate" limitation in his ability to reach. R. at 19. However, the ALJ concluded that this limitation did not preclude plaintiff from performing sedentary work. *Id*.

Reaching is "required in almost all jobs," and a reaching limitation "may eliminate a large number of occupations a person could otherwise do." *Gishey v. Colvin*, 2015 WL 1505674, at *8 (N.D.N.Y. Mar. 31, 2015) (Kahn, J.) (quoting *Selian v. Astrue*, 708 F.3d 409, 422 (2d Cir. 2013). Importantly, however, sedentary jobs "generally do not involve overhead reaching, pushing, or pulling." *Gishey*, 2015 WL 1505674, at *8 (citation omitted); *see also Sova v. Colvin*, 2014 WL 4744675, at *8 (N.D.N.Y. Sept. 23, 2014) (McAvoy, J.) (adopting Report & Recommendation of Dancks, M.J.) ("[S]edentary work is not substantially eroded where a claimant has only overhead reaching limitations, as opposed to limitations reaching in any direction.").

Upon review, plaintiff's argument on this point will be rejected. To be sure, *significant* limitations in the ability to reach may preclude a claimant from performing a large number of jobs they might otherwise be qualified to do. *See, e.g.*, *Selian*, 708 F.3d at 422 (remanding where ALJ failed to make a determination about the claimant's ability to reach even though he "testified that he could not reach above his head at all").

However, the burden of proof at this step is still on the claimant. *See, e.g.*, *Talavera v.*

- 8 -

*Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (summary order) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry; the Commissioner bears the burden in the last.").  Notably, plaintiff completed a function report in 2016 in which he stated that reaching "doesn't require extra effort" and that he "can do reach[ing]." R. at 205.  In this report, plaintiff also states that he "can use [his] hands easily." *Id*.  At his hearing before the ALJ, plaintiff testified that his primary problems involved his back and lower extremities, including pain caused by his prosthetic leg. *Id.* at 91-103.  Plaintiff did testify about pain in his shoulder, *id*. at 102, but even Dr. Lorensen noted that plaintiff had full range of motion in both his shoulders as well as in his elbows, forearms and wrists, *id.* at 282.

In other words, plaintiff has faulted the ALJ for not giving him a more restrictive RFC (*i.e.*, one that included a substantial reaching limitation) without offering any other record evidence for why the RFC should be more restrictive as to reaching.  This lack of evidence, combined with the associated facts that (1) Dr. Lorensen did not indicate any limitations related to overhead reaching in her report, and (2) it is only overhead reaching that "substantially erodes" a claimant's ability to do sedentary work, means that plaintiff has not shown reversible error.  *Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (summary order) (rejecting claimant's assertion that the ALJ failed "to make specific findings regarding her ability to reach" where claimant failed to identify "record evidence that would support a claim that she was limited in her reaching ability").  Accordingly, the ALJ did not err at step four.

Plaintiff's other arguments are non-starters.  First, plaintiff argues that the ALJ erred by relying on the Medical–Vocational Guidelines at step five.  Pl.'s Mem. at 9.  According to plaintiff, the ALJ was obligated to solicit the testimony of a Vocational Expert who could opine

as to how his limited reaching ability impacted his ability to do sedentary work. *Id*. at 9-10.

The Commissioner can meet his burden at step five in one of two ways. If a claimant's impairments are primarily or exclusively exertional in nature, defendant may appropriately rely on the Medical–Vocational Guidelines contained in 20 C.F.R. Pt. 404, Subpt. P, App. 2. *See Roma v. Astrue*, 468 F. App'x 16, 20 (2d Cir. 2012) (summary order).

Commonly known as "the Grid" or "the Grids," the Medical–Vocational Guidelines are a collection of tables that "simplify and expedite the determination of disability" by offering "predeterminations of disability or non-disability for individual cases based on various combinations of residual functional capacity, age, education and work skill." *Davis v. Shalala*, 883 F. Supp. 828, 832 (E.D.N.Y. 1995) (citation omitted).

Notably, the Commissioner may rely on the Grids even if a claimant suffers from one or more non-exertional impairments. *See, e.g.*, *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986) (Cardamone, J.) ("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines."). However, if a claimant's non-exertional limitations "significantly diminish" the residual capacity to work, the Commissioner "must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Chaparro v. Colvin*, 156 F. Supp. 3d 517, 537 (S.D.N.Y. 2016) (cleaned up).

As just discussed, the ALJ acted permissibly in not assessing any significant reaching limitation in plaintiff's RFC. Thus, in the absence of any significant nonexertional limitations, the ALJ can rely solely on the Grids to satisfy his burden of proof at step five. *See, e.g.*, *Knight v. Astrue*, 32 F. Supp. 3d 210, 223 (N.D.N.Y. 2012) (Bianchini, M.J.) (explaining that an ALJ is not required to rely on vocational expert unless a claimant's nonexertional

impairments "significantly diminish" their ability to do work-related activities).

Plaintiff also argues the ALJ should have solicited the testimony of a Vocational Expert because his "moderate limitation in reaching represents a serious problem for an individual doing sedentary work, which is mostly handling small objects." Pl.'s Mem. at 10. However, as the Regulations cited above make clear, reaching and handling are distinct tasks. Dr. Lorensen found that plaintiff's hand and finger dexterity were intact, that his grip strength was "5/5" in both hands, and that he had no gross limitations in his ability to handle small objects with his hands. R. at 282-83. Plaintiff has not offered any evidence that might rebut Dr. Lorensen's findings about his ability to manipulate objects with his hands. Again, absent a significant nonexertional limitation (such as significant limitation in one's ability to manipulate small objects), the ALJ can rely solely on the Grids to satisfy his burden of proof at step five. *See, e.g.*, *Knight*, 32 F. Supp. 3d at 223.

Finally, plaintiff argues the ALJ failed to consider the effect that plaintiff's inability to speak English would have on his ability to work in the United States. Pl.'s Mem. at 10. Plaintiff is correct that the Regulations require an ALJ to categorize a claimant's education and linguistic ability using certain terms. *See, e.g.*, *Torres v. Comm'r of Soc. Sec.*, 2015 WL 5444888, at *4 (W.D.N.Y. Sept. 15, 2015). For instance, the term "illiteracy" as used in the Regulations "means illiteracy in English, not illiteracy in all languages." *Id*. The Regulations also require an ALJ to evaluate a claimant's education while being mindful of the fact that formal education provided in a foreign language may not translate neatly to the ability to find work in this country. *See id.*

In short, plaintiff seems to be arguing that the ALJ should have made specific findings about whether or not plaintiff could speak any English, and if so how well he could do so. A

good example of this would be *Torres*, the case that plaintiff cites in support of this argument. There, the ALJ "largely ignored" the fact that "the record contain[ed] substantial information to suggest that [the claimant was] unable to communicate in English." *Torres*, 2015 WL 5444888, at *5-*6.

The problem with this argument is that the ALJ specifically found that plaintiff is "illiterate or unable to communicate in English." R. at 20. And the Grid rule on which the ALJ relied specifically accounts for an individual who is illiterate or unable to communicate in English. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.23; *see also Pasic v. Comm'r of Soc. Sec.*, 2012 WL 3782563, at *8 (D. Vt. Aug. 31, 2012) ("Rule 201.23 applies to claimants who are between the ages of eighteen and forty-four, whose previous work experience is unskilled or none, and who are illiterate *or* unable to communicate in English." (cleaned up)).

As the *Pasic* court explained, Rule 201.23 can be applied whether a plaintiff is illiterate, unable to speak English, or both. 2012 WL 3782563 at *8-*9.[5] In this case, the ALJ made a specific finding that plaintiff was illiterate or unable to speak English, which makes perfect sense given that he testified that he had only recently immigrated to the United States from Syria by way of Egypt. R. at 99-100.

With that specific finding in mind, it is hard to understand how plaintiff can claim that the ALJ failed to consider the fact that he is unable to communicate in English. *See, e.g.*, *Jimenez v. Colvin*, 2013 WL 1332630, at *12 (E.D.N.Y. Mar. 31, 2013) (holding Grid Rule 201.23 applied where claimant was illiterate and opining that the Rule would have applied to a finding the claimant could not communicate in English). Accordingly, the ALJ did not err at

---

[5] The rule is different in the Fifth Circuit. *Pasic*, 2012 WL 3782563, at *9.

step five.

## IV. **CONCLUSION**

The ALJ applied the appropriate legal standards and supported his written decision with substantial evidence in the record.

Therefore, it is

ORDERED that

1. Plaintiff's motion for judgment on the pleadings is DENIED;

2. The Commissioner's motion for judgment on the pleadings is GRANTED;

3. The Commissioner's decision is AFFIRMED; and

4. Plaintiff's complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

Dated:  November 19, 2020
        Utica, New York.

_____
United States District Judge